JOHN RHODES
Assistant Federal Defender
Federal Defenders of Montana
Missoula Branch Office
125 Bank Street, Suite 710
Missoula, MT 59802
Phone: (406) 721-6749
Fax:  (406) 721-7751
Email:  john_rhodes@fd.org

Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MONTANA**

**BUTTE DIVISION**

| UNITED STATES OF AMERICA, | Case No.  CR 12-07-BU-DLC |
|---|---|
| Plaintiff, | |
| vs. | **SENTENCING MEMORANDUM** |
| JOSEPH FRANKLIN REYNOLDS, | |

**I.  INTRODUCTION**

JOSEPH FRANKLIN REYNOLDS' ("Mr. Reynolds") offense conduct reflects his age, immaturity, and social isolation, all of which contributed to his stunted ability to comprehend the impact of his actions on others.  He requests a sentence of five years imprisonment, including alcohol and drug treatment, followed by a substantial

term of supervised release.

## II.  ARGUMENT

1.  <u>The Court knows the governing law: it must impose a parsimonious individualized sentence</u>.

Given the severe sentence advised by the Guidelines, an individualized sentence is particularly important for the 20-years-old Mr. Reynolds.  *See* Ron and Bonnie Rohletter letter ("We know he is a good kid.").

> Joey is one of eleven children, all of which were homeschooled.  He was raised in a chaotic environment where social norms and boundaries were not introduced or enforced.  As a result, Joey used technology in an inappropriate way that I am sure he had no idea had such profound and enduring consequences.  Although now an adult, Joey is very socially immature due to the fact he was not socialized in a public or formal school setting.  I doubt his mother ever even had the conversation with him about appropriate internet/text behaviors.  As such, Joey made a poor choice and must assume responsibility for his choices.
>
> However, in my heart of hearts, I feel it would be a great disservice to society and Joey to lock him up.  I feel Joey needs counseling and a Job Corp or military experience in lieu of incarceration.  He needs the clear and direct boundaries that a paramilitary or military experience would provide him.  He is not a bad kid; he is a product of poor socialization, and he made ignorant and misguided choices with technology.  He is actually a sweet, funny, helpful, and easy going boy in real life.

Ellen Guettler letter.

As the Court knows, it must parsimoniously exercise its discretion.  The Sentencing Reform Act

> contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,'

'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'

*Kimbrough v. United States,* 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)).

Post-*Booker,* sentencing law "reflects the common theme throughout the Supreme Court's recent sentencing decisions – to 'breathe life into the authority of district court judges to engage in individualized sentencing.'" *United States v. Ruff*, 535 F.3d 999, 1002 (9th Cir. 2008) (quoting *United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) (*Whitehead* citations omitted)).

That individualized sentence must be no greater than necessary. 18 U.S.C. § 3553(a). See *Kimbrough,* 552 U.S. at 101 (district court "may determine . . . that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing"; district court's below-Guidelines sentence in drug case not unreasonable because "it appropriately framed its final determination in line with §3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals").

2. <u>The Guidelines advise an unduly harsh sentence</u>.

Here, the cross-reference in U.S.S.G. § 2G2.2 escalates the Guidelines-recommended sentencing range to far greater than necessary. Mr. Reynolds' conduct is not excusable. The Guidelines still overstate the sufficient sentence. "It was poor upbringing, not malicious intent that led him down this path." Ellen Guettler letter.

The Guidelines do not account for Mr. Reynolds' age and immaturity. PSR ¶ 62. The Guidelines do not searchingly explore Mr. Reynolds' production of child pornography.

The Court is familiar with *United States v. Henderson*, 649 F.3d 955 (9th Cir. 2011). There the defendant challenged "the district court's failure to exercise the discretion accorded it in *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007), to vary from the Sentencing Guidelines based on policy disagreements with them and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Id*. at 956.

The appeal focused on "*Kimbrough* Sentencing Discretion." *Id.* at 958. The Ninth Circuit overviewed *Kimbrough*, the Sentencing Commission's role in promulgating the Sentencing Guidelines, and the Guidelines' role in sentencing. *Id*. at 959.

> *Kimbrough's* rationale is not limited to the crack-cocaine Guidelines. *See United States v. Mitchell*, 624 F.3d 1023, 1030 (9th Cir. 2010) ("As the Supreme Court through *Booker, Kimbrough*, and *Spears* has instructed, and as other circuits that have confronted the crack/powder variance in the sentence of a career offender have accepted and clarified in their circuit law, sentencing judges can reject *any* Sentencing Guideline, provided that the sentence imposed is reasonable.") (emphasis in original). *See also United States v. Corner*, 598 F.3d 411, 415 (7th Cir. 2010) ("We understand *Kimbrough* and *Spears* to mean that district judges are at liberty to reject *any* Guideline on policy grounds — though they must act reasonably when using that power.") (emphasis in original). Moreover, as we will now explain, the history of the child pornography Guidelines reveals that, like the crack-cocaine Guidelines at issue in *Kimbrough*, the child pornography Guidelines

>  were not developed in a manner "exemplify[ing] the [Sentencing] Commission's exercise of its characteristic institutional role." *Kimbrough*, 552 U.S. at 109, so district judges must enjoy the same liberty to depart from them based on reasonable policy disagreement as they do from the crack-cocaine Guidelines discussed in *Kimbrough*.

*Id*. at 960 (underlines added).

The court then detailed the basis for the law underlined above, quoting the Commission's own work to summarize: "Much like policymaking in the area of drug trafficking, Congress has used a mix of mandatory minimum penalty increases and directives to the Commission to change sentencing policy for sex offenses." *Id*. at 960 (quoting U.S. Sentencing Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goal of Sentencing Reform* 72 (2004) ("*Fifteen-Year Assessment*"), http://www.ussc.gov/15_year/15_year_study_full.pdf.").

*Kimbrough* discretion applies to child pornography sentencings. The government agreed in *Henderson*. *Id*. at 962 ("During oral argument, the government recognized that district courts have authority to disagree with the child pornography Guidelines). The Ninth Circuit thus held in *Henderson*, "district courts may vary from the child pornography Guidelines, § 2G2.2, based on policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case. See *Spears*, 129 S. Ct. at 843; *Kimbrough*, 552 U.S. at 109-10." *Id*. at 963 (footnote omitted).

> Other courts have applied *Kimbrough* and *Henderson* reasoning to U.S.S.G. § 2G2.1.
>
> The prosecution nevertheless argues that U.S.S.G. § 2G2.1 lacks the specific enhancements that caused me to reject U.S.S.G. § 2G2.2 on the ground that those enhancements improperly skewed sentences upward without regard to distinctions between least and worst offenders or a particular defendant's conduct and characteristics.
>
> * * *
>
> Some of these flaws are also present in U.S.S.G. § 2G2.1, which also recommends enhancements for conduct present in nearly every case to which the guideline would apply: a two- or four-level enhancement in § 2G2.1(b)(1) based on the age of the minor involved; a two-level enhancement in § 2G2.1(b)(3) if the offense involved distribution; a four-level enhancement in § 2G2.1(b)(4) if the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, not applicable here only because of the inadequacy of proof that the male penis shown in one image with an underage female, which was distributed to the minor, could not be conclusively shown to be the penis of an adult male; and the two-level increase in § 2G2.1(b)(6)(B) for use of a computer or an interactive computer service to entice the minor.  Thus, contrary to the prosecution's contentions, U.S.S.G. § 2G2.1 has some of the same flaws that I found warranted categorical rejection of U.S.S.G. § 2G2.2.

*United States v. Jacob*, 631 F. Supp. 2d 1099, 1114-15 (N.D. Iowa 2009).

> This Court recognizes that while many courts have criticized the child pornography sentencing guidelines with respect to § 2G2.2 for child pornography possession and distribution crimes, courts have less frequently criticized § 2G2.1, which applies to production crimes. Section 2G2.1 differs from § 2G2.2 in that it contains enhancements where there is a commission of a sexual act with the victim, where the defendant is the parent of the victim, or where the defendant has distributed the images. These are factors that warrant enhancement. However, this Court finds that § 2G2.1 presents some of the same problems presented by § 2G2.2. Section 2G2.1 is similarly not the

> product of empirical study by the Sentencing Commission. See *Huffstatler*, 571 F.3d at 623 ("[P]erhaps for good reason, the government did not take issue with Huffstatler's premise that the child-exploitation guidelines lack an empirical basis. As the Sentencing Commission itself has stated, '[m]uch like policymaking in the area of drug trafficking, Congress has used a mix of mandatory minimum penalty increases and directives to the Commission to change sentencing policy for sex offenses.'" (citation omitted)). Additionally, Section 2G2.1 similarly applies enhancements present in nearly every production case, including, for example, an adjustment of 2 or 4 depending on the age of the minor involved and an adjustment of 2 for an offense involving distribution. *See U.S.S.G.* § 2G2.1. These enhancements skew offense levels upward such that the Guideline does not appropriately distinguish between the least culpable and most culpable offenders. See *United States v. Jacob*, 631 F. Supp. 2d 1099 (N.D. Iowa 2009) (rejecting § 2G2.1 on policy grounds, finding that § 2G2.1 has some of the same flaws that the court found warranted categorical rejection of § 2G2.2).

*United States v. Price*, 2012 U.S. Dist. LEXIS 38397, *33-34 (C.D. Ill. 2012).

This law applies here. Perhaps most importantly, the Guidelines do not factor in Mr. Reynolds' age and immaturity. The United States Supreme Court has recognized that "juveniles are generally less culpable for their misconduct than adults." *Roper v. Simmons*, 543 U.S. 551, 599 (2005). This conclusion reflects general differences between juveniles and adults. First, juveniles often have "an underdeveloped sense of responsibility," resulting in "impetuous and ill-considered actions and decisions." *Id*. at 569. Second, "juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure." *Id*. Finally, "[t]he personality traits of juveniles are more transitory, less fixed" than those of adults. *Id*. at 570.

The Court later concluded that "[n]o recent data provide reason to reconsider *Roper*'s holding that because juveniles have lessened culpability they are less deserving of the most serious forms of punishment." *Graham v. Florida*, 130 S. Ct. 2011, 176 L. Ed. 2d 825, 831 (2010). While Mr. Reynolds is not a juvenile, he is young and immature.

District courts have acknowledged this law.

> As the Supreme Court has recently noted: there are significant differences in the moral responsibility for crime between adults and juveniles under eighteen. *See Roper v. Simmons*, 161 L. Ed. 2d 1, 125 S. Ct. 1183, 2005 U.S. LEXIS 2200, No. 03-633, 2005 WL 464890, at *11-12 (U.S. Mar. 1, 2005) (holding that the execution of persons under the age of eighteen at the time of their crime is unconstitutional). Juveniles have an underdeveloped sense of responsibility, are more vulnerable to negative influences and peer pressure, and their character is not as well formed as an adult's. 2005 U.S. LEXIS 2200, [WL] at *12. Thus, "it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character." *Id*.

*United States v. Naylor*, 359 F. Supp. 2d 521, 524 (W.D. Va. 2005); see also *United States v. Polito*, 215 Fed. Appx. 354, 356 (5th Cir. 2007) (below-Guidelines sentence imposed in part because defendant "was only eighteen years old and very immature at the time of the offense and his age and mental condition 'prohibited him from acting rationally'").

3. <u>Mr. Reynolds' case is outside the heartland of child pornography producers</u>.

Mr. Reynolds Guidelines result from a cross-reference to production of child pornography. PSR ¶ 28. He does not dispute his conduct. In this case, however, the Guidelines are too blunt.

"[T]he Guidelines are not a straightjacket for district judges. They do give discretion to depart." *United States v. Cook*, 938 F.2d 149, 152 (9th Cir. 1991). While the departure Guidelines are categorically banned from applying here, the departure caselaw remains instructive.

*Koon v. United States*, 518 U.S. 81 (1996), charted the analytical framework for departures. The Supreme Court started from the premise that the Guidelines "'place essentially no limit on the number of potential factors that may warrant a departure.'" *Koon*, 116 S.Ct. at 2050 (quoting *Burns v. United States*, 501 U.S. 129, 136-37 (1991)).

The Court then established a universal departure analysis.

> <u>If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure</u>. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole decide whether it is sufficient to take the case out of the Guideline's heartland."

Federal Defenders of Montana
125 Bank Street, Suite 710
Missoula, MT 59802
(406) 721-6749

9

*Koon*, 116 S.Ct. at 2045 (citations omitted) (underline added). The underline prohibition controls here; nonetheless, the outside the heartland concept reverberates in this case. The Ninth Circuit affirmed its compliance with this approach and noted that departure "embodies the traditional exercise of discretion by a sentencing court." *United States v. Sanchez-Rodriguez*, 161 F.3d 556, 559 (9th Cir. 1998) (en banc) (citing *Koon*, 518 U.S. at 98).

Post-*Booker*, this departure methodology still controls. *United States v. Cantrell*, 433 F.3d 1269, 1279-80 (9th Cir. 2006).

As pointed out in *Gall*, even before *Booker*, the Supreme Court said in *Koon* that, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States,* 552 U.S. 37, 52 (2007) (quoting *Koon*, 518 U.S. at 113). Thus, the Guidelines before Booker, "place[d] essentially no limit on the number of potential factors that may warrant a departure." *Koon,* 518 U.S. at 106; *United States v. Coleman*, 188 F.3d 354, 358 (6th Cir. 1999) (en banc) (there are a "potentially infinite number of factors which may warrant a departure").

Guidelines Chapter 1, Part A, comment 4(b) of the Guidelines overviews this authority.

> The sentencing statute permits a court to depart from a guideline-specified sentence when it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

*Id*. See also U.S.S.G. § 5K2.0; see also *Rita v. United States*, 551 U.S. 338, 344, 350 (2007) (traditional departure is justified, if the offense or offender is "atypical" and thus not within the "mine-run" of similar cases); *Koon*, 518 U.S. at 100) ("the severity of the misconduct, its timing, and the disruption it causes" may influence determination whether the misconduct is atypical).

Mr. Reynolds' offense conduct was outside the heartland. See, e.g., *United States v. Parish*, 308 F.3d 1025, 1030-1031 (9th Cir. 2002) (affirming outside the heartland downward departure in child pornography case).

A Guidelines downward departure, however, is unavailable. The Feeney Amendment to the PROTECT Act legislatively bans judicial departures for outside the heartland offenses in child crimes and sex offenses. U.S.S.G. § 5K2.0(b).

Nonetheless, post-*Booker*, § 3553(a) frees the Court to consider outside the

heartland facts in imposing a below-Guidelines to sentence.

4.      Five years is the parsimonious sentence.

Mr. Reynolds requests a below-Guidelines sentence of five years, which is the mandatory minimum, and the sentence that is sufficient but not greater than necessary to promote the goals Congress established when it enacted 18 U.S.C. § 3553(a).

No one disputes Mr. Reynolds' age or immaturity, both are rampant throughout this case.

> When I met Joey, he was 18 years old and had been homeschooled all his life. Joey had not experienced the outside world and had received very little guidance as to how this world works. In addition, Joey was one of the most emotionally immature adults I have ever met. He was excited to be exploring, and it became clear that Joey lacked boundaries and an understanding of what is right and wrong or appropriate. I am sure Joey did not realize the impact his actions would have on others or that they were criminal in nature; I feel this is a result of poor parenting rather than criminal mischief. I believe time in prison will only widen the gap of his understanding and respect for the court. It is my opinion that Joey needs guidance and vocational training to better succeed in this world.

Sarah C. Ghicadus letter.

Mr. Reynolds has taken responsibility for his actions. He wrote a letter of apology to L.N. PSR ¶ 18.

> This conserns the famly wich i have harmed expeciely [victim J]. Theres no excuse for what i put you through but i just would like to say im sorry for what it's werth, I have lerend a varry valueble lesone and im sorry you had to teach it to me, but i have no entetion to contact u ever agian. im sorry we met this way and i hope you can forget about this soon. agian im taribly sorry.

PSR ¶ 18, letter from Joey Reynolds.

Mr. Reynolds agreed to testing and counseling. PSR ¶¶ 61-68. The PSR details his candor in counseling. It also reports his sexual abuse in childhood. PSR ¶ 65.

His friends and family support Mr. Reynolds fully and expect that he will, in the future, contribute positively to society. *See* Rohletter letter.

> He has accepted responsibility for his actions and we do believe he wants to make a good impact on others. Joey has a lot of goals for his future. Please give him a chance. We believe in Joey and we believe he can make something of himself.

Rohletter letter.

Albeit brief given his young age, Mr. Reynolds has proven his willingness to work and maintain employment, including working multiple jobs. PSR ¶¶ 70-72; *see also* Rohletter letter ("He was a very hard worker and worked well with all of us. We asked him to do something and he would do it. He's always showed respect to my husband and I ever since he was younger.").

Based on the history and characteristics of Mr. Reynolds, as well as the nature and circumstances of the offense of conviction, along with all of the other § 3553(a) factors, the appropriate sentence is five years.

As summarized by the Rohletters:

> He's trying to get his GED and he's determined to learn from this lesson. He wants to take the rehabilitation class and we know several people who have completely changed their lives from going through programs like that. We know Joey will do great and turn his life around. Because we think he wants to do good! Joey is a very positive person and he will turn this bad experience into one in which he can help others. He has always wanted to put God number one in his life.
>
> We don't think his crime warrants the 5 years. We do not believe he is a harm to society because we believe he can put it behind him and through this he can better himself and come out better than some of the people that you think have it 100% together. This has been an eye opening experience for him and he's sorry for his mistake. He is a good kid. He has his whole life ahead of him. We think what he's gone through so far is enough, just give him a chance to better his life and work on a career.

Rohletter letter.

    a.    <u>Mr. Reynolds will suffer the collateral consequences of a registered sex offender</u>.

The Court may also consider, both for purposes of public safety and in considering an appropriate sentence, the significant collateral consequences of a sex offense conviction. Mr. Reynolds will be forever branded with a label unique among convicted felons, a "sex offender," required by both state and federal law to register. It is, of course, his own behavior that has put him in this position, and he accepts that fact. But it is undeniable that life as a registered sex offender is measurably more compromised than life after a conviction for any other type of offense.

> b.  <u>Sentencing Mr. Reynolds to the mandatory minimum serves the purposes of sentencing</u>.

Given the nature of the instant offense, including the amount of pornography involved, and the personal history and characteristics of Mr. Reynolds, the mandatory minimum sentence reflects the seriousness of the offense, satisfies the need for just punishment, promotes respect for the law, affords adequate deterrence, and protects the public from future crimes. *See* 18 U.S.C. § 3553(a). A lengthy term of supervised release will also fulfill these factors.

Mr. Reynolds' decision to cooperate with law enforcement and then undergo counseling reflects he has taken his case seriously. His decision to violate the conditions of his release reflects his immaturity and his need for more supervision.

> c.  <u>The state plea agreement called for 30 days in jail</u>.

As noted in the PSR at ¶ 55, the instant case originated in state court. Per the attached plea agreement(Exhibit A), that agreement contemplated a six year deferred sentence with 30 days in jail. See *United States v. Wilkerson*, 411 F.3d 1, 24 (1st Cir. 2005) (where district court judge "repeatedly expressed his concern about disparate treatment between federal and state court sentences in similar cases, but stated that Guidelines did not permit him to take that disparity into account," case remanded for resentencing).

5. <u>Sentencing Mr. Reynolds below the Guidelines range would not produce undue disparity</u>.

During Fiscal Year 2011, 65.7 % of § 2G2.2 defendants received sentences below the Guidelines. *United States Sentencing Commission 2011 Sourcebook*, Table 28. According to a United States Sentencing Commission survey, 70% of federal judges said they thought § 2G2.2 produced unreasonably high sentences for possession cases, and 69% of judges thought § 2G2.2 produced unreasonably high sentences for cases involving receipt. United States Sentencing Commission Report, "*Results of Survey of United States District Judges January 2010 through March 2010*" (June 2010) at Table 8. See generally Sen. Arlen Specter and Linda Dale Hoffa, *A Quiet Growing Judicial Rebellion Against Harsh Sentences For Child Pornography Offenses – Should the Laws Be Changed?*, <u>The Champion</u>, October 2011.

A five year sentence would not create unwarranted sentencing disparity.

## IV. CONCLUSION

Mr. Reynolds requests that the Court impose a five year term of custody, followed by a lengthy period of supervision, recommend Mr. Reynolds' participation in the BOP's RDAP, and order restitution in the amount of $65,618 with interest waived pursuant to 18 U.S.C. § 3612(f)(3)(A).

RESPECTFULLY SUBMITTED this 28th day of November, 2012.

                                            JOSEPH FRANKLIN REYNOLDS

By: */s/ John Rhodes*
     JOHN RHODES
     Assistant Federal Defender
     Federal Defenders of Montana
        Counsel for Defendant

# CERTIFICATE OF COMPLIANCE

I hereby certify that this Sentencing Memorandum is in compliance. The brief's line spacing is double spaced, and is proportionately spaced, with a 14 point font size and contains less than 6,500 words. (Total number of words: 3,993 excluding tables and certificates).

DATED this 28th day of November, 2012.

                                          JOSEPH FRANKLIN REYNOLDS

By:   */s/ John Rhodes*
       JOHN RHODES
       Assistant Federal Defender
       Federal Defenders of Montana
          Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2012, a copy of the foregoing document was served on the following persons by the following means:

<u>1, 2</u>   CM-ECF

<u>    </u>   Hand Delivery

<u>4   </u>   Mail

<u>    </u>   Overnight Delivery Service

<u>    </u>   Fax

<u>3   </u>   E-Mail

1. CLERK, UNITED STATES DISTRICT COURT

2. CYNDEE L. PETERSON
   Assistant U.S. Attorney
   P.O. Box 8329
   Missoula, MT 59807
       Counsel for the United States of America

3. MARTIN HYLLAND
   United States Probation Office
   P.O. Box 7675
   Missoula, MT 59807
       United States Probation Officer

4. JOSEPH FRANKLIN REYNOLDS
       Defendant

        By:   */s/ John Rhodes*
             JOHN RHODES
             Assistant Federal Defender
             Federal Defenders of Montana
                Counsel for Defendant